IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANE MORRISSEY,
individually and on behalf of all
similarly-situated persons,

       Plaintiff,

                                    CASE NO. 2:19-cv-13027

v.

CCS SERVICES, PLLC d/b/a/ SILVER
TAX GROUP, d/b/a 1-800-LAW-FIRM
FEDERAL TAX DEFENSE, d/b/a 1-800-
LAW-FIRM NATIONAL TAX DEFENSE,
d/b/a 1-800-LAW-FIRM NATIONAL TAX
DEFENSE TEAM, d/b/a 1-800-LAW-FIRM
TAX DEFENSE, CHAD SILVER, and
CHORUS HR GROUP, LLC,

       Defendants.

_____/

David R. Deromedi (P42093)
DICKINSON WRIGHT PLLC
Attorneys for Plaintiff
500 Woodward Avenue, Suite 4000
Detroit, Michigan  48226
Tel.:  313-223-2500
dderomedi@dickinsonwright.com

_____/

**CLASS AND COLLECTIVE ACTION COMPLAINT: JURY DEMANDED**

Plaintiff Jane Morrissey ("Plaintiff"), individually and on behalf of all similarly situated employees, by and through her attorneys, alleges for her Complaint as follows:

## **INTRODUCTION**

1.     Plaintiff brings this action against CCS Services, PLLC d/b/a Silver Tax Group, d/b/a 1-800-Law-Firm Federal Tax Defense, d/b/a 1-800-Law-Firm National Tax Defense, d/b/a 1-800-Law-Firm National Tax Defense Team, d/b/a 1-800-Law-Firm Tax Defense (collectively "Silver Tax Group"), Chad Silver, individually ("Silver"), and Chorus HR Group, LLC ("Chorus") (hereinafter referred to collectively as "Defendants"), for legal relief to redress unlawful violations of Plaintiff's rights under the Fair Labor Standards Act of 1938 ("FLSA" or "the Act"), 29 U.S.C. §§201, *et seq.*, and specifically the collective action provision of the Act found at §216(b), to remedy violations of the wage provisions of the FLSA by Defendants which have deprived the Plaintiff, as well as others similarly-situated to Plaintiff, of their lawful wages.

2.     Plaintiff also brings this action against Defendants for legal relief to redress unlawful violations of the Michigan Workforce Opportunity Wage Act (hereinafter "MWOWA"), Mich. Comp. Law. § 408.411 *et seq.*, pursuant to Rule 23 of the Federal Rules of Civil Procedure

3. Other current and former employees of Defendants are also entitled to receive their proper hourly unpaid wages and/or overtime compensation for the reasons alleged in this Complaint. Plaintiff is permitted to maintain this action "for and on behalf of [herself] and other employees similarly-situated." 29 U.S.C. §216(b).

4. This action is brought to recover unpaid hourly and overtime compensation owed to the Plaintiff and all current and former employees of Defendants who are similarly-situated to the Plaintiff, pursuant to the FLSA. The Plaintiff and the collective group of similarly-situated employees are, or have been, employed by Defendants within the three year period prior to the filing of this Complaint, up through the present (the "Recovery Period").

5. During the Recovery Period, Defendants committed violations of the FLSA by requiring and/or suffering or permitting their non-exempt employees, including Plaintiff, to routinely work more than 40 hours per week without payment of overtime compensation.

6. Plaintiff and all similarly-situated employees who elect to participate in this action seek unpaid compensation, an equal amount of liquidated damages, attorneys' fees, and costs pursuant to 29 U.S.C. §216(b).

7. Plaintiff and all similarly-situated employees are similarly entitled to relief pursuant to MWOWA and Rule 23 of the Federal Rules of Civil Procedure.

## THE PARTIES

### The Plaintiff

8.    Plaintiff Jane Morrissey currently resides in Florida and is a citizen of the United States.   Plaintiff Morrissey was employed by the Defendants from approximately March 6, 2017 through February 15, 2019, as a Settlement Officer or a Senior Settlement Officer.   During the entirety of her employment, Plaintiff worked remotely from her home in Florida using equipment provided by Defendants.

9.    During her employment with Defendants, Plaintiff worked as a non-exempt employee with the job titles of Settlement Officer and Senior Settlement Officer.  Plaintiff routinely worked more than 40 hours each workweek.  Even though she was non-exempt and worked a substantial number of overtime hours, Defendants failed to pay Plaintiff overtime compensation as required by the FLSA or MWOWA.

10.    Plaintiff's job was to field incoming calls from potential clients who owed back taxes to the Internal Revenue Service ("IRS").  It was Plaintiff and other similarly-situated individuals' jobs to sell Silver Tax Group's services to these individuals in order to get them to retain Silver Tax Group to assist them with the IRS.

11.    At all times material to this action, the Plaintiff and all similarly-situated members of this collective action were employees of Defendants as defined by §203(e)(1) of the FLSA.

4

12.     At all times material to this action, the Plaintiff and all similarly-situated members of this class action were employees of Defendants as defined by Mich. Comp. Law §408.412.

13.     Plaintiff worked for the Defendants within the territory of the United States within the three-year period preceding the filing of this lawsuit.

14.     Plaintiff was a non-exempt employee covered by the overtime provisions of §207 of the FLSA throughout the Recovery Period during which she was employed by Defendants.

15.     Plaintiff was a non-exempt employee covered by the overtime provisions of 408.414a of the MWOWA throughout the Recovery Period.

## The Defendants

16.     Defendant Silver Tax Group is organized under the laws of the State of Michigan, with its principal office located in Pontiac, Michigan.

17.     Defendant Silver Tax Group, is a law firm specializing in assisting individuals in dealing with the IRS.   According to the At-Will Employment Agreement presented to Plaintiff and dated June 28, 2017:

> [CCS Services, PLLC] is a Michigan based Tax firm comprised of a team of National Tax Defense Professionals and assistants representing taxpayers all over the United States.  Employer [i.e., CCS Services, PLLC], has handled thousands of cases and its Tax Resolution services are very effective and expansive; doing business throughout all states in the United States of America

operating under of these names or assumed names (as maybe changed, modified, added to, amended or canceled from time to time):

CCS Services, PLLC, Silver Tax Group, 1-800-Law-Firm Tax Defense, 1-800-Law-Firm Federal Tax Defense, d/b/a 1-800-Law-Firm National Tax Defense, d/b/a 1-800-Law-Firm National Tax Defense Team.

18.     According to Defendant Silver Tax Group's website: "If you are being threatened by the IRS, it is a serious situation that requires quick action. We can provide you with the emergency assistance you need.  Within 24 hours, we can stop the IRS from garnishing your wages, placing a levee on your bank accounts or taking other damaging actions."

19.     Defendant Silver Tax Group's website further states: "You Need a Tax Attorney:  Taking on the IRS alone is a bad idea if for no other reason than you don't know what you don't know.  You may also be thinking about working with a tax resolution service to take care of your IRS issues.  This is also a bad idea."  The website goes on to say:  "What should you do?  Put an experienced tax attorney on your side.  At Silver Tax Group, you will be dealing with a lawyer who has taken on the IRS and won for clients across the nation.  Not only will you receive the representation you need during a difficult time, you will have the one-on-one service you deserve. ***We answer our phones 24/7 and are always available to answer your questions and put your mind at ease as the process unfolds***."  (Emphasis added).

6

20.     The Silver Tax Group website identifies its "experienced team" as follows:  "The attorneys of our firm — led by Chad C. Silver — bring more than four decades of federal tax defense experience to the legal matters facing our clients. For a competitive price, they can help you find an efficient resolution to your tax issues and keep the IRS from pushing you around.  Learn more about our attorneys by clicking on the links below."  The only link on the website related to the "experienced team" is to Defendant Chad Silver's biography.

21.     Upon information and belief, throughout the Recovery Period, Defendant Chad Silver owned Silver Tax Group.  Chad Silver exercised supervisory authority and day-to-day control over the Plaintiff and over other present and former non-exempt employees who are similarly-situated to Plaintiff throughout the Recovery Period.  Defendant Chad Silver used his position and authority with Silver Tax Group to devise, institute, promulgate, enforce, approve and/or ratify the policy and practice of depriving Plaintiff and other similar-situated employees of their lawful overtime pay for his personal financial benefit.

22.     During the Recovery Period, Defendant Chad Silver hired or fired employees, and/or had the authority to hire and fire them, established pay levels and compensation policies for Silver Tax Group employees and made other decisions which affected the terms and conditions of work for employees such as the Plaintiff.

23.     Defendant Chad Silver made the decision to not pay the Plaintiff and similarly-situated employees 150% of their regular hourly rates for the overtime hours they worked in excess of 40 hours in a given workweek.

24.     During all or part of the Recovery Period, Defendant Chad Silver enforced, approved and/or ratified a policy and practice of failing to pay Plaintiff and other similarly-situated employees overtime pay at the rate of time and one-half their regular hourly rates as required by the FLSA and MWOWA.

25.     Throughout the Recovery Period, Defendant Chad Silver knew that the law required that employees of the Defendants be paid overtime pay at the rate of 150% of their regular hourly rates for hours worked in excess of forty hours in a workweek.

26.     Upon information and belief, during the Recovery Period, Chorus HR Group managed and supervised The Silver Tax Group's Human Resources.

27.     Defendant Chorus was a joint employer of Plaintiff and other similarly-situated employees during the Recovery Period.

28.     Defendants are subject to personal jurisdiction in the State of Michigan for purposes of this lawsuit.

29.     At all times material to this action, Silver Tax Group, has been an enterprise engaged in commerce or in the production of goods for commerce as

8

defined by §203(s)(1) of the FLSA, and has had a gross volume of sales which has exceeded $500,000.

30.    At all times material to this action, Silver Tax Group has been an "employer" of the Plaintiff and all similarly-situated members of this collective action as defined by §203(d) of the FLSA.

31.    At all times material to this action, Chad Silver has been an "employer" of the Plaintiff and all similarly-situated members of this collective action defined by §203(d) of the FLSA.

32.    At all times material to this action, Chorus has been an "employer" of the Plaintiff and all similarly-situated members of this collective  action as defined by §203(d) of the FLSA.

33.    At all times material to this action, the Silver Tax Group has been an "employer" of the Plaintiff and all similarly-situated members of this class action as defined by Mich. Comp. Law §408.412.

34.    At all times material to this action, Chad Silver has been an "employer" of the Plaintiff and all similarly-situated members of this class action as defined by Mich. Comp. Law §408.412.

35.    At all times material to this action, Chorus has been an "employer" of the Plaintiff and all similarly-situated members of this class action as defined by Mich. Comp. Law §408.412.

36.    Throughout the Recovery Period, the overtime provisions set forth in §207 of the FLSA apply to the Defendants such that the Defendants owe their non-exempt employees overtime pay for each hour they work in excess of 40 hours in a workweek.

37.    Throughout the Recovery Period, the overtime provisions set forth in §408.414a of the MWOWA apply to the Defendants such that the Defendants owe their non-exempt employees overtime pay for each hour they work in excess of 40 hours in a workweek.

## JURISDICTION AND VENUE

38.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 (federal question jurisdiction); and 29 U.S.C. §216(b) (FLSA).

39.    This Court has supplemental jurisdiction over this action pursuant to 28 U.S.C. §1367 over Plaintiff's MWOWA and other state law claims because such claims are so related to the FLSA claims that the form part of the same case or controversy.

40.     Venue is proper in the Eastern District of Michigan under 28 U.S.C. §1391(b)-(c).

## FACTUAL ALLEGATIONS

41.     Defendants have intentionally and repeatedly engaged in a practice of improperly and unlawfully failing to pay their non-exempt employees overtime pay including, but not limited to, the Plaintiff and the collective group of similarly-situated employees who worked for Defendants in violation of the provisions of the FLSA, MWOWA, and corresponding federal regulations.

42.     Specifically, Defendants have intentionally and repeatedly engaged in the practice of failing to pay their non-exempt employees, including the Plaintiff, at the required rate of time and one-half their regular hourly rate of pay, in violation of the provisions of the FLSA and MWOWA.

43.     In particular, Defendants requested and/or "suffered or permitted" Plaintiff and all other similarly-situated employees to work without proper compensation in violation of the FLSA and clear regulatory provisions and guidelines applicable to their operations.  For instance, 29 C.F.R. §785.11 provides in pertinent part that "[w]ork not requested but suffered or permitted is work time.  For example, an employee may voluntarily continue to work at the end of the shift. . . . The reason is immaterial.  The employer knows or has reason to believe that he is continuing to

work and the time is working time."  Moreover, 29 C.F.R. §785.13, titled "Duty of Management," provides in pertinent part that "[i]n all such cases it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed.  It cannot sit back and accept the benefits without compensating for them."  These regulations applied to, and continue to apply to, Defendants.

44.     Beginning in 2016, and continuing through 2018, Plaintiff was scheduled to work either from 8 a.m. through 5 p.m., or 11 a.m. through 8 p.m., five (5) days a week, depending on the shift she was assigned.  Customarily, Plaintiff was not able to take an uninterrupted thirty (30) minute break during her shift.

45.     Plaintiff customarily worked past the end of her scheduled shift to complete calls with potential customers.

46.     On days when Plaintiff worked from 8 a.m. through 5 p.m. and a fellow Settlement Officer or a Senior Settlement Officer reported they would not be able to work, Plaintiff would work a double shift at Defendants' request.

47.     Up until November 2018, one weekend a month, Plaintiff was required to work on Saturday and Sunday from 8 a.m. until 8 p.m. Plaintiff was then required to work on the Monday following the weekend she worked, and continue working

through Friday of that week.  Thus, once a month for approximately sixteen (16) months, Plaintiff was required to work twelve (12) consecutive days.

48.   Beginning in November 2018, Defendants did away with the Sunday shift, however Plaintiff was still required to work one Saturday a month from 8 a.m. until 8 p.m.

49.   Plaintiff specifically recalls working Memorial Day weekend in both 2017 and 2018.  She was required to work from 8 a.m. to 8 p.m. on Saturday, Sunday and Monday of Memorial Day weekend, and then resume her normal work schedule on the Tuesday after Memorial Day.

50.   Throughout her employment with Defendants, Plaintiff worked remotely from her home in Florida using equipment provided by Defendants, including a personal computer loaded with applications from which she was able to do her job, as well as a specific phone system (ShorTel) that included a physical phone for her use. In order to perform her job duties, Plaintiff needed to be logged into Defendants' computer and phone systems.  "Leads" or potential clients were directed to employees (such as Plaintiff) who were logged into Defendants' computer and phone systems. Records from these systems would demonstrate when, and for how long and how often, Plaintiff and other similarly-situated individuals were logged into the system and working.

13

51.    Defendants also used the application SalesForce in order to track calls and contact with customers.  Records from SalesForce would also demonstrate when, and for how long and how often, Plaintiff and other similarly-situated individuals were working for Defendants.

52.    Using a program called Right Signature, Plaintiff and other similarly-situated individuals who were working for Defendants would prepare contracts for clients to sign if they decided to retain Silver Tax Group.  Plaintiff and other similarly-situated individuals who were working for Defendants had little to no discretion to alter these contracts.  Such contracts would then be transmitted to clients to sign electronically using the program DocuSign, also provided by Defendants.

53.    Without providing notice, and contrary to applicable law, Defendants recorded calls with potential clients.

54.    Plaintiff's last day of employment with Defendant was February 15, 2019.  Plaintiff contends she was constructively discharged, while Defendants contend she voluntarily resigned.   In a letter dated February 18, 2019, Leslie Holland ("Holland"), Silver Tax Group's Director of Operations, stated, in relevant part: "Silver Tax Group *and Chorus HR Grou*p have accepted your voluntarily resignation" (emphasis added).  A true and correct copy of this letter is attached hereto as **Exhibit 1**.

55.     After Plaintiff's employment with Defendants ceased, counsel for Defendants instructed Plaintiff to return the following:   1) computer tower; 2) monitor; 3) keyboard; 4) mouse; 5) desk phone; 6) headset; and 7) cell phone.  All equipment belonging to Defendants was returned by Plaintiff on or around March 18, 2019.

56.     Many of the contracts Plaintiff and other similarly-situated individuals who were working for Defendants drafted were to be paid to Defendants residually over time as services were provided.  Plaintiff and other similarly-situated individuals who were working for Defendants were entitled to commissions on these residually paid funds.  Despite the fact that contracts Plaintiff had secured were continuing to be paid to Defendants, Plaintiff has not received any commissions she is owed from Defendants since December 2018.

57.     On December 10, 2018, Plaintiff emailed Holland regarding her compensation and specifically inquired about her compensation as follows:  "Please confirm I am supposed to be a non-exempt employee and with a small base + commission – not a 'bonus.'"  A true and correct copy of this email is attached hereto as **Exhibit 2**.

58.     After sending this email, Holland told Plaintiff orally that, under Michigan law, her compensation needed to be classified as a bonus rather than a

commission because it was against the law for Defendants to solicit business. Neither Holland, nor anyone employed by Defendants, ever told Plaintiff she was an exempt employee during her employment.

59.    Conservatively, Plaintiff worked at least sixty (60) hours per week for Defendants, but was not paid at time and one-half her regular hourly rate as required by the FLSA and MWOWA for the hours she worked in excess of 40 in a workweek.

60.    Plaintiff's experience is typical of other employees who worked for Defendants.

## SCOPE OF DEFENDANTS' LIABILITY

61.    Throughout the Recovery Period, Defendant Chad Silver had operational control over the business activities and operations of Silver Tax Group, including control over the employees they employed.

62.    In particular, Defendant Chad Silver directed and controlled work performed by the Plaintiff and all similarly-situated employees who worked for him, or had the right to direct and control their work, and implemented, approved, and/or ratified the policy of not paying proper overtime pay to Plaintiff and other similarly-situated employees.

63.    Throughout the Recovery Period, Defendant Chad Silver was fully aware of the fact that Plaintiff and other similarly-situated employees were not paid at the

rate of time and one-half their regular hourly rate of pay for all the hours worked in excess of 40 in a workweek.

64. Accordingly, Defendant Chad Silver acted "directly or indirectly in the interest of an employer in relation to" the Plaintiff and other similarly-situated employees within the meaning of §203(d) of the FLSA, and is thus individually and personally liable for the unpaid wages, liquidated damages, costs and attorneys' fees, and all other relief sought herein.

65. On information and belief, there are other similarly-situated present and former employees of Defendants during the Recovery Period who have been improperly compensated in violation of the FLSA and MWOWA and who would benefit from the issuance of court-supervised notice of the present action. Those similarly-situated employees are known to Defendants and are readily identifiable and locatable through Defendants' records. Specifically, all current and former employees should be notified who, at any time during the Recovery Period, have been "suffered or permitted to work" for Defendants without receiving their proper and lawful overtime wages.

66. Plaintiff asserts her FLSA claims pursuant to 29 U.S.C. §216(b) as a collective action on behalf of the following opt-in collective class members:

17

> All current and former non-exempt employees of Defendants for the Recovery Period, who were employed as, held, or performed the duties of Settlement Officer or a Senior Settlement Officer (the "Collective Class").

67.     Plaintiff seeks to pursue her FLSA claim on behalf of all individuals who opt into this action pursuant to 29 U.S.C. §216(b).

68.     Plaintiff and the Collective Class are "similarly situated" as that term is defined in 29 U.S.C. §216(b) because, *inter alia*, Defendants did not pay them for all hours worked, as mandated by the FLSA.

69.     All, or virtually all, of the legal and factual issues that will arise in litigating these collective action claims are common to Plaintiff and the Collective Class.  These issues include:  1) whether and to what extent Defendant did not pay for all hours worked; 2) whether and to what extent these unpaid hours include hours worked over forty (40) in a week; and, 3) whether and to what extent such overtime hours were compensated at one and one-half times the regular rate of pay.

70.     Plaintiff also brings this action on her own behalf and, pursuant to Rule 23 of the Federal Rules of Civil Procedure based on her allegations regarding Defendants violations of the MWOWA, on behalf of the following individuals:

> All current and former non-exempt employees of Defendants for the Recovery Period, who were employed as, held, or performed the duties of a Settlement Officer or a Senior Settlement Officer (the "Rule 23 Class").

71.     Plaintiff is a member of the class she seeks to represent.

72.     The Rule 23 Class is sufficiently numerous that joinder of all members is impractical, satisfying Fed. R. Civ. P. 23(a)(1).

73.     All members of the Rule 23 Class share the same pivotal questions of law and fact, thereby satisfying Fed. R. Civ. P. 23(a)(2).  Specifically, all members of the Rule 23 Class share the questions of:  1) whether and to what extent Defendants did not pay for all hours worked; 2) whether and to what extent these unpaid hours include hours worked over forty (40) in a week; and, 3) whether and to what extent such overtime hours were compensated at one and one-half times the regular rate of pay.

74.     Plaintiff's claims are typical of the claims of the Rule 23 Class, thus satisfying Fed. R. Civ. P. 23(a)(3).  Defendants' failure to pay for all time worked was not the result of any Plaintiff-specific circumstances.   Rather, it arose from Defendants' common payroll policies, which Defendant applied to all Settlement Officers or Senior Settlement Officers.

75.     Plaintiff will fairly and adequately represent and protect the interests of the Rule 23 Class.  Further, Plaintiff has retained competent counsel experienced in

representing classes of employees against her employers related to her employers' failure to pay them properly under the law, thus satisfying Fed. R. Civ. P. 23(b)(2).

76.    By consistently failing to pay their employees for all hours worked, Defendants have created a scenario where questions of law and fact common to Rule 23 Class members predominate over any questions affecting only individual members. Thus, a class action is superior to other available methods for fair and efficient adjudication of this matter. Accordingly, Plaintiff is entitled to pursue her claims as a class action, pursuant to Fed. R. Civ. P. 23(b)(3).

## COUNT ONE:  FLSA VIOLATIONS

77.    Plaintiff repeats and incorporates by reference the allegations contained in Paragraphs 1-76 herein. By their actions alleged herein, Defendants willfully, knowingly, and/or recklessly violated the provisions of the FLSA and corresponding federal regulations.

78.    Defendants willfully and intentionally engaged in a widespread pattern and practice of violating the provisions of the FLSA, as detailed herein, by endeavoring to prevent the proper compensation of Plaintiff and other present and former, similarly-situated employees in accordance with §207 of the FLSA.

79.     As a result of Defendants' violations of the FLSA, Plaintiff, as well as all others similarly-situated, has suffered damages by failing to receive their lawful overtime wages in accordance with §207 of the FLSA.

80.     Defendants have made no good faith effort to comply with the FLSA with respect to their compensation of Plaintiff or other similarly-situated employees.

81.     Defendants' willful conduct is evidenced by its treatment of Plaintiff.

82.     As a result of the unlawful acts of Defendants, Plaintiff and all persons similarly-situated to Plaintiff have been deprived of their rightful hourly and/or overtime compensation in an amount to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and all other compensation and relief permitted by applicable law.

83.     Pursuant to 29 U.S.C. §216(b), a Consent to participate in this action signed by the Plaintiff is attached hereto as **Exhibit 3**.

## COUNT TWO:  MWOWA VIOLATIONS

84.     Plaintiff repeats and incorporates by reference the allegations contained in Paragraphs 1-83 herein.  By their actions alleged herein, Defendants willfully, knowingly, and/or recklessly violated the provisions of the MWOWA.

85.     Defendants willfully and intentionally engaged in a widespread pattern and practice of violating the provisions of the MWOWA, as detailed herein, by

endeavoring to prevent the proper compensation of Plaintiff and other present and former, similarly-situated employees in accordance with Mich. Comp. Law. § 408.41a.

86.    As a result of Defendants' violations of the MWOWA, Plaintiff, as well as all others similarly-situated, has suffered damages by failing to receive their lawful overtime wages in accordance with Mich. Comp. Law. § 408.414a.

87.    Defendants have made no good faith effort to comply with the MWOWA with respect to their compensation of Plaintiff or other similarly-situated employees.

88.    Defendants' willful conduct is evidenced by its treatment of Plaintiff.

89.    As a result of the unlawful acts of Defendants, Plaintiff and all persons similarly-situated to Plaintiff have been deprived of their rightful hourly and/or overtime compensation in an amount to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and all other compensation and relief permitted by applicable law.

## COUNT THREE:  BREACH OF CONTRACT

90.    Plaintiff repeats and incorporates by reference the allegations contained in Paragraphs 1-89 herein.

91.     At present, Plaintiff brings this claim solely on behalf of herself, pending further investigation as to whether Defendants have engaged in similar wrongful conduct with other members of the proposed class.

92.     Plaintiff entered into a compensation agreement with Defendants whereby Defendants agreed to pay Plaintiff a commission for all contracts she secured from clients who decided to utilize Silver Tax Group's services.

93.     This agreement was made between parties capable of contracting and contained mutual obligations and valid consideration.

94.     Plaintiff performed all conditions precedent, if any, required of her under this agreement.

95.     Defendants failed and refused to perform their obligations in accordance with the terms and conditions of the agreement by failing to pay Plaintiff for all commissions earned since December 2018.

## COUNT FOUR:  UNJUST ENRICHMENT

96.     Plaintiff repeats and incorporates by reference the allegations contained in Paragraphs 1-95 herein.

97.     At present, Plaintiff brings this claim solely on behalf of herself, pending further investigation as to whether Defendants have engaged in similar wrongful conduct with other members of the proposed class.

98.     Defendants were obligated to pay Plaintiff for all commissions earned.

99.     Because of the wrongful activities described above, Defendants have received the benefit of Plaintiff's work and have therefore received money belonging to the Plaintiff.

100.    Defendants were aware of and appreciated the benefit Plaintiff conferred.

101.    Defendants have been unjustly enriched as a result of their retaining commissions earned by Plaintiff.  It would be unjust to allow Defendants to enjoy the fruits of Plaintiff's labor without proper compensation.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all other similarly-situated persons, pray for the following relief:

A.      An order permitting this litigation to proceed as a collective action pursuant to 29 U.S.C. §216(b) and a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.      Prompt notice, pursuant to 29 U.S.C. §216(b) and Rule 23 of the Federal Rules of Civil Procedure, of this litigation to all potential members of the Collective Class and the Rule 23 Class;

C.      A judgment against Defendants and in favor of Plaintiff, and those she seeks to represent, for compensation for all unpaid and underpaid wages that

Defendants have failed and refused to pay in violation of the FLSA and/or Michigan law;

   D.    Prejudgment interest to the fullest extent permitted under the law;

   E.    Liquidated damages to the fullest extent permitted under the FLSA and MWOWA;

   F.    Litigation costs, expenses, and attorneys' fees to the fullest extent permitted under the FLSA and MWOWA; and,

   G.    Such other, further legal and equitable relief, including but not limited to, any injunctive and/or declaratory relief to which they may be entitled.

                              **DICKINSON WRIGHT PLLC**


                              By: */s/ David R. Deromedi*
                                   David R. Deromedi (P42093)
                              Attorneys for Plaintiff
                              500 Woodward Avenue, Suite 4000
                              Detroit, Michigan  48226
                              Tel.:  313-223-2500
                              dderomedi@dickinsonwright.com



NASHVILLE 89190-1 700737v3